**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00273-CHL**

**KEIRSTIE S.,[1]** **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,** **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Complaint filed by Plaintiff, Keirstie S. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) Claimant and the Commissioner each filed a brief and/or Fact and Law Summary, and Claimant filed a reply. (DNs 12, 17, 18.) The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 8.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

## I. BACKGROUND

On July 11, 2023, Claimant applied for disability insurance benefits under Title II ("DIB") and supplemental security income under Title XVI ("SSI"). (R. at 27, 94-96, 104, 112-14, 123, 238-56.) Her applications alleged disability beginning on June 20, 2019, due to diabetes, high blood pressure, high cholesterol, neuropathy, sleep apnea, osteoarthritis, lymphoedema, degenerative disc disease, fibromyalgia, right total knee replacement, and borderline bipolar

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

disorder. (*Id.* at 27, 94-96, 104, 112-14, 123, 324.) Claimant's applications were denied initially and again on reconsideration. (*Id.* at 132-41, 143-50.)

At Claimant's request, Administrative Law Judge ("ALJ") Jonathan Stanley ("the ALJ") conducted a hearing on Claimant's applications on November 5, 2024. (*Id.* at 50-72, 151.) Claimant attended the hearing by telephone with her non-attorney representative, and an impartial vocational expert also participated in the hearing. (*Id.* at 52, 233.) During the hearing, Claimant testified to the following. She generally doesn't drive and lets her husband do most of the driving. (*Id.* at 54.) Her back, legs, and feet hurt all the time. (*Id.* at 56.) She can only stand for ten minutes before pain forces her to sit down to rest. (*Id.*) She can sit for ten minutes before she has to get up and move around. (*Id.* at 61.) Sitting makes her knee stiff and causes swelling in her legs. (*Id.*) She experiences neuropathy that affects her balance so she uses a cane and walker when she has to leave the house, and her walker has a seat on it so she can sit down when she is tired or hurting. (*Id.* at 56-57) She uses her cane if she is going to a doctor's appointment on the first floor, and she uses her walker with a seat on it in a multi-floor building so she has a place to rest. (*Id.* at 58.) Her neuropathy is constant, causes her pain and discomfort in her hands and feet, and keeps her from being able to grip things tightly. (*Id.* at 62-63.) She drops "anything and everything." (*Id.*) She uses a pump to manage her lymphedema and also wears vascular stockings. (*Id.* at 57.) Her pain in her lower back is a constant ache, and her back pain is made worse by sitting for long periods, walking, and standing. (*Id.*) She can walk about one hundred feet before she needs a break. (*Id.* at 57-58.) She can lift a gallon of milk but has trouble carrying a laundry basket. (*Id.* at 60.) Carrying things generally puts her off balance so she tries to avoid it. (*Id.*) Her husband does most of the household chores. (*Id.* at 63.) Her chronic pain causes her to be fatigued all the

time, and she has to take a nap in the afternoon due to pain for two to three hours every day. (*Id.* at 64-65.)

The ALJ issued an unfavorable decision on November 18, 2024. (*Id.* at 24-49.) Applying the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled, the ALJ made the following findings. First, the Claimant had not engaged in substantial gainful activity since her June 20, 2019, alleged onset date. (*Id.* at 30.) Second, Claimant had the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy, osteoarthritis of the right hip with trochanteric bursitis, osteoarthritis of the knees, status post total right knee replacement, bilateral lower extremity tibialis posterior tendinitis, Achilles tendinitis, diabetes mellitus type 2 with neuropathy, polyarthralgia/fibromyalgia, lymphedema/peripheral venous hypertension with inflammation, venous insufficiency/peripheral vascular disease, bilateral plantar fasciitis, obesity, major depressive disorder, bipolar disorder, and generalized anxiety disorder. (*Id.*) Third, Claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 31.) Fourth, Claimant had the residual functional capacity ("RFC") to perform sedentary work with the following exceptions:

> [C]laimant requires a handheld assistive device such as a cane for ambulation; can occasionally push and pull using the lower extremities; can occasionally climb stairs and ramps, but cannot climb ropes, ladders and scaffolds; can occasionally balance, stoop, kneel and crouch; cannot crawl; can frequently handle, finger and feel; can occasionally operate foot pedals; must avoid concentrated exposure to vibration; cannot work at unprotected heights or around hazards such as heavy equipment or around moving mechanical parts; can understand, remember and carry out detailed but not complex instructions and procedures; can use judgement to make detailed work-related decisions; can maintain adequate attention and concentration to perform detailed tasks on a sustained basis for two hour intervals with normal supervision; can manage and tolerate occasional changes in a routine work setting; and can adapt to the pressures of simple routine work; and can interact frequently with supervisors, coworkers and the general public.

(*Id.* at 35.) Additionally at step four, the ALJ found that Claimant had no past relevant work. (*Id.* at 41.) Fifth, and finally, considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*Id.* at 42.) The ALJ concluded that Claimant was not under a disability from June 20, 2019, through the date of his decision. (*Id.*)

Claimant subsequently requested an appeal to the Appeals Council, which denied her request for review on April 15, 2025. (*Id.* at 1-6, 13-14, 236-37.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2025); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on May 12, 2025. (DN 1.)

## II. DISCUSSION

The Social Security Act authorizes payments of DIB to persons with disabilities. *See* 42 U.S.C. §§ 401-434, 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2025).

### A. Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

**B. Five-Step Sequential Evaluation Process for Evaluating Disability**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2025). In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2025).

(4) Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C. Claimant's Contentions

Claimant made two arguments. Her first argument is listed as being that the ALJ failed to account for the total limiting effects of her impairments, but her argument really relates to the ALJ's consideration of the opinion of Dr. Mohammad F. Shahzad, M.D., ("Dr. Shahzad"). (DN 12, at PageID # 1394, 1400-05; DN 18, at PageID # 1459-64.) Her second argument is that the jobs identified by the ALJ at step five did not exist in significant numbers in the national economy. (DN 12, at PageID # 1394, 1405-09; DN 18, at PageID # 1464-65.) The Court will address her arguments separately below.

#### 1. Dr. Shahzad's Opinion

The applicable regulations set forth specific rules an ALJ must follow with regard to opinion evidence. Pursuant to 20 C.F.R. §§ 404.1520c, 416.920c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the

record regardless of its source.[3] 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2025). Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(a), (c); 20 C.F.R. § 416.920c(a), (c). The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(a), (b)(2); 20 C.F.R. § 416.920c(a), (b)(2). However, the regulations state that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus, an ALJ is not required to explicitly discuss how he or she weighed the factors of relationship with the claimant,[4] specialization, and other factors.[5] 20 C.F.R. §§ 404.1520c(b)(1)-(2), 416.920c(b)(1)-(2). Where two medical opinions reach different conclusions but are "equally well-supported . . . and consistent with the record," an ALJ is required to state how he or she considered the other "most persuasive" factors in making his or her decision. 20 C.F.R. § 404.1520c(b)(3), 416.920c(b)(3).

The Sixth Circuit has not elucidated a specific standard aside from the text of the regulation to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability

---

[3] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2025).

[4] In assessing this factor, the regulations require an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).

[5] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5). These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [ ] receive[d] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).

and consistency factors" under the regulations. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). *But see Gregory v. Comm'r of Soc. Sec.,* No. 26-5022, 2026 WL 1763752, at *2 (6th Cir. June 18, 2026) (quoting in part 20 C.F.R § 404.1520c(b)(2)) ("To pass muster, the ALJ need only explain 'how [he] considered the supportability and consistency factors for a medical source's medical opinions.' "); *Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *2 (6th Cir. Sept. 28, 2023) (noting that the new regulations "substantially reduce[] the ALJ's obligation to explain the basis for his or her assessment of medical opinions"); *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims"). However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287, at *1 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the

ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions”).

Dr. Shahzad provided a two sentence opinion on Claimant’s functioning. (R. at 981.) He wrote in a May 31, 2024, letter, “[Claimant] is to have her cane and walker with her at all times when walking due to balance issues. She has had both knees replaced and is at a fall risk.” (*Id.*) Claimant argued that the ALJ should have credited Dr. Shahzad’s opinion regarding her need for a walker and included it in his RFC. (DN 12, at PageID # 1401.) The ALJ found Dr. Shahzad’s opinion unpersuasive, writing:

> it is not supported by adjective [*sic*] examination findings and is inconsistent with the medical evidence of record which includes improvement in blood glucose levels and A1c and good compliance with her diabetic medication regimen; observations of having no erythema or swelling and normal alignment of the spine, normal motor strength and muscle tone, no cyanosis of the extremities, intact sensation, intact strength in the bilateral lower extremities, normal range of motion in the feet, and recent observations of normal gait and negative straight leg raise tests bilaterally, as well as reports of improvement with some treatments (C3F; C4F/6; C5F; C7F; C9F/31, 158, 180, 196, 221, 257, 270, 280, 288, 302; C11F/7; C14F/5; C16F; C18F; C19F/4, 13-14; C20F/4; C21F/5).

(R. at 40-41 (citing *id.* at 440-47, 453, 467-501, 522-34, 607, 734, 756, 772, 797, 833, 846, 856, 864, 878, 979, 1012, 1045-51, 1058-1281, 1285, 1294-95, 1301, 1314).) Claimant challenges the ALJ’s assessment of both the supportability and consistency factors.

As to supportability, which relates to “the objective medical evidence and supporting explanations presented by a medical source [ ] to support his or her medical opinion(s),” 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1), Claimant argued that the ALJ’s discussion did not sufficiently address the supporting explanations that Dr. Shahzad provided for his opinion. (DN 12, at PageID # 1404.) The Court finds this contention without merit. The ALJ’s decision stated that the “objective” examination findings did not support Dr. Shahzad’s opinion, and one of the records he cited in support was Dr. Shahzad’s own examination findings from his initial January 30, 2024,

appointment with Claimant.[6] (R. at 41 (citing *id.* at 1301).) During that exam, Dr. Shahzad documented 5/5 muscle strength, full range of motion in Claimant's lumbar spine, full range of motion in Claimant's upper and lower extremities, normal gait, and normal reflexes. (*Id.* at 1301.) While uncited by the ALJ, this is consistent with Dr. Shahzad's findings during his May 31, 2024, examination of Claimant, the same day he issued his opinion. (*Id.* at 1307 (documenting 5/5 muscle strength and normal gait).) These appear to be the only two records of Claimant's visits with Dr. Shahzad in the administrative record. As Dr. Shahzad's records, including the one cited by the ALJ, do not document deficits in balance or issues with walking, the Court finds that the ALJ's stated reasoning did sufficiently address the basis for Dr. Shahzad's opinion and was an adequate explanation of how the ALJ weighed the supportability factor to comport with both the regulatory requirements and substantial evidence.

The balance of the ALJ's analysis of Dr. Shahzad's opinion concerned consistency, which relates to the relationship between a medical opinion and "the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Claimant argued that the ALJ's consistency analysis was insufficient because it did not address treatment notes documenting her use of a walker and only emphasized normal findings in the record. (DN 12, at PageID # 1402-04.) But Claimant's argument suffers from two deficiencies. First, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir. 2000)); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."). Thus, the fact that the ALJ did not cite the records

[6] Like the Commissioner, the Court presumes the ALJ's reference to "adjective examination findings" to be a typographical error that should have instead read "objective examination findings." (DN 17, at PageID # 1444 n.6.)

emphasized by Claimant is not immediately fatal. Second, the Claimant's argument depends on an isolated reading of the ALJ's decision that is not supported by a reading of the decision as a whole. At step three, the ALJ found that Claimant's impairments did not meet or equal Listings 1.15, 1.16, or 1.18 regarding certain musculoskeletal disorders because, in relevant part, "[t]he medical evidence of record does not show . . . a documented medical need for a walker, bilateral canes, bilateral crutches, or wheeled and seated mobility device involving both hands." (R. at 31.) The ALJ then went on in his RFC analysis to find that Claimant needed "a handheld assistive device such as a cane for ambulation." (*Id.* at 35.) He cited Claimant's own testimony at the hearing that she uses a walker but found that "[C]laimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 36.) He then noted much of the same evidence he cited in his specific analysis of Dr. Shahzad's opinion: Claimant's diabetes and diabetic neuropathy, musculoskeletal impairments, knee replacements, and pain. (*Id.* at 37-38.) He then specifically recounted a number of abnormal findings in the record, explanting that

> on examination, the claimant has been observed as having an antalgic gait and ambulating with assistance of a cane, tenderness and limited range of motion in the lumbar spine, tenderness to palpation over the right hip trochanter and surrounding musculature, extremity edema and erythema, positive bilateral straight leg raises, pain on palpation of the left heel and posterior tibial tendon, and instability and weakness with laxity and loss of stability noted with range of motion in the bilateral ankles.

(*Id.* at 38.) He then emphasized many of the same normal findings he emphasized in his consistency analysis as contrasting evidence to these abnormal findings. (*Id.*) The ALJ's presentation of the evidence demonstrates that the record contained contradictory evidence concerning Claimant's functioning and that in determining Claimant's RFC, he was performing his duty to weigh the record. Because the ALJ cited to substantial evidence in the record to support

his conclusions and characterizations, the Court finds that Claimant has done nothing more than point to other evidence in the record that could support the opposite conclusion. This is insufficient to justify reversal on substantial evidence review. *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108. The ALJ's consistency analysis was both supported by substantial evidence and sufficient to comport with the regulatory requirements.

For these reasons, the Court finds the ALJ's supportability and consistency analysis and overall determination of Claimant's RFC supported by substantial evidence and compliant with the applicable regulations.

**2. Job Numbers**

Claimant's second and final argument was that the ALJ's step five finding was not supported by substantial evidence because the jobs identified by the ALJ did not exist in significant numbers in the national economy. (DN 12, at PageID # 1394, 1405-09; DN 18, at PageID # 1464-65.) At step five, the ALJ has the burden of demonstrating that there exists a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g); 20 C.F.R. §§ 404.1560(c), 416.960(c) (2025); *Jordan*, 548 F.3d at 423. The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy that the claimant can perform considering the combination of his or her limitations. *See, e.g.*, *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 76 (6th Cir. 2012); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). The ALJ did so here, relying on the testimony of a VE who testified in response to hypothetical questions from the ALJ that an individual with Claimant's RFC could

> perform the requirements of representative occupations such as order clerks, DOT# 209.567-014, sedentary, SVP 2, with 51,000 jobs in the national economy; final

> assemblers, DOT# 713.687-018, sedentary, SVP 2, with 125,500 jobs in the national economy; and circuit board inspector, DOT# 726.684-110, sedentary, SVP 2, with 51,000 jobs in the national economy.

(R. at 42, 66-71.) Claimant argued that the jobs identified by the VE "do not exist in the exorbitant numbers listed in the decision at either the national or regional level based on occupational data derived from [the] SkillTRAN" Job Browser Pro database ("SkillTRAN"). (DN 12, at PageID # 1406.) Claimant provided data from SkillTRAN alongside her motion in support of her argument. (DN 12-1.) But nothing about the transcript of the hearing suggests that the VE was pulling his numbers from SkillTRAN. Neither the ALJ, nor Claimant's non-attorney representative questioned the VE about the source of his data. (R. at 66-72.) And without such testimony, the Court has no reason to presume that the VE used SkillTRAN. Claimant also provided no authority to permit this Court to look outside the administrative record to contradict the VE's finding. As the Sixth Circuit has instructed, "[a]ll that is required before an ALJ can rely on vocational evidence provided by a vocational expert is that the ALJ either ensure that the evidence does not conflict with the information in the [Dictionary of Occupational Titles] or obtain a reasonable explanation for any conflict." *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 317 (6th Cir. 2020). The ALJ did so here. And, as the Sixth Circuit explained regarding a similar argument in *O'Neal*, the Claimant's failure to cross-examine the VE on these issues during the hearing is fatal to her arguments. In *O'Neal*, the Claimant argued that the job data provided by the Dictionary of Occupational Titles ("DOT") was obsolete and "it was unlikely that . . . [t]he jobs described in the DOT listing [at issue] current exist in significant numbers in the national economy." *Id.* at 316. The Sixth Circuit criticized O'Neal's argument, writing

> Contrary to O'Neal's suggestion, the ALJ was under no duty "to conduct an independent investigation" into the vocational expert's testimony to determine whether it was correct. O'Neal had a chance to cross-examine the vocational expert during the hearing, and he did not. We cannot know if cross-examination would

> have suggested that the surveillance-system monitor job was in fact obsolete. For example, a cross-examination could have shown that the surveillance-system monitor job requires far more training than it did when the DOT was created.
>
> Because the DOT continues to be recognized as a source of reliable job information and O'Neal did not cross-examine the vocational expert when he had the opportunity, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that O'Neal was able to perform work that existed in significant numbers in the national economy.

*Id.* at 318 (internal citations omitted) (citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006)). Similarly here, the Claimant did not inquire as to the basis for the VE's testimony during the hearing or raise the SkillTRAN numbers she now proffers to the Court for commentary by the VE and the ALJ. This is fatal to her argument.

The Sixth Circuit "has held repeatedly that the testimony of a vocational expert identifying specific jobs available in the regional economy that an individual with the claimant's limitation could perform can constitute substantial evidence supporting an ALJ's finding at step [five] that the claimant can perform other work." *Wilson*, 378 F.3d at 549 (citing *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996); *Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 481 (6th Cir. 1988)). Claimant has proffered no legal authority to undercut this holding or to undercut the VE's testimony on which the ALJ relied in this case. In the absence of the same, the Court find's Claimant's arguments without merit and the ALJ's step five finding supported by substantial evidence.

## III. CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that the final decision of the Commissioner is **AFFIRMED**. A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of Record
September 24, 2026